IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DIANE L. MUSSER, | : |
|     Petitioner | : |
| | :   CIVIL NO. 3:CV-09-0151 |
| v. | : |
| | :   (Judge Caputo) |
| RHODA A. WINSTEAD, *et al.*, | : |
|     Respondents | : |

**M E M O R A N D U M**

**I.    Introduction**

Petitioner Diane L. Musser, a state inmate presently confined at the State Correctional Institution at Cambridge Springs, in Cambridge Springs, Pennsylvania, initiated the above action *pro se* by filing a Petition for Writ of Habeas Corpus under the provisions of 28 U.S.C. § 2254.  Doc. 1, Habeas Pet.  Ms. Musser challenges her 2006 conviction in the Dauphin County Court of Common Pleas. For the reasons set forth herein, the Petition will be denied.


**II.    Background and Procedural History[1]**

On or about June 15, 2004, in response to complaints of drug activity at 512 South 15th Street, in Harrisburg, Pennsylvania, the Harrisburg City Police Vice Unit

---

[1] The facts contained in this section are primarily extracted from the trial court's Memorandum Opinion dated December 28, 2006, and the October 11, 2007, decision of the Superior Court of Pennsylvania affirming Petitioner's judgment of sentence.  *See* Doc. 12-3 at pp. 42-51 and 54-64, respectively.

with the assistance of a confidential informant (CI), arranged a controlled drug buy from the residence.  Doc. 12-3 at pp. 42-45.  The CI entered the home and purchased from Ms. Mussesr two bags of what later tested positive as crack cocaine.  Video surveillance taken shows the CI approaching, entering, and exiting the residence, and includes Ms. Musser peeking her head out the front door of the home as the CI left the home.  *Id*. at pp. 42-43.

Based on the controlled buy, a search warrant was issued for the residence, Ms. Musser, and all other occupants inside the home.  *Id*.  The search warrant was executed the morning of June 17, 2004.  *Id*.  Ms. Musser, her mother, her son and co-defendant, Gary Boyd-Chisholm, and several other younger children were present when the police arrived.  *Id*.  The search of the home yielded cash, two small bags of cocaine, three corner bags of crack cocaine, one bag of loose cocaine, a razor blade, a paper plate with cocaine residue, and a nine millimeter handgun and ammunition.  *Id*. at 44-45.

Both Ms. Musser and Gary Boyd-Chisholm were arrested and charged with Possession with Intent to Deliver a Controlled Substance in violation of 35 P.S. § 780-780-113(a)(30), Criminal Conspiracy in violation of 18 PA. CONS. STAT. ANN. § 903(a), and Unlawful Possession of Paraphernalia in violation of 35 P.S. § 780-113(a)(32) as a result of the raid on 512 South 15th Street residence.  *Id*. at p. 54.

On April 20-22, 2005, a two day jury trial was held in the Court of Common Pleas of Dauphin County.  *Id*. at p. 45.  After approximately four hours of deliberation, the jury foreman informed the court that the jury was deadlocked.  *Id*. at

p. 50.  The record of the declaration for the mistrial provides in part:

> The Court: Ladies and gentlemen, good afternoon. We received a note from your foreperson, [foreperson], that indicates, well, Judge Lewis, we are at a point where we absolutely cannot agree on any of the five counts for either of the two defendants, signed by [foreperson].
>
> Ladies and gentlemen, I guess I need to inquire whether you, the jury, are hopelessly deadlocked, whether there is no possibility that, with further deliberations, you will reach a unanimous verdict on at least some of these charges.
>
> [Foreperson]?
>
> The Foreperson: That is true.
>
> The Court: You're hopelessly deadlocked?
>
> The Foreperson: Yes.
>
> The Court: Do you think further deliberations will be fruitful?
>
> The Foreperson:  No.  There is one person that has reservations and we have asked, and they said there is no way they are going to change.
>
> The Court: Very well.  And I need you to understand, ladies and gentlemen, that if you, a jury, cannot reach a verdict, then I would have to declare a mistrial.
>
> The nickname for that is hung jury which means that the case gets tried all over again in front of a brand new jury at a later date.  It doesn't disappear from the radar screen.
>
> That's just a drain on everyone's time.  And, quite frankly, it is a drain on you in the sense that you are paying for it, so it is a drain on your tax dollars as well.
>
> But with that in mind, is that still the feeling of the jury; that any further attempts at deliberations will be fruitless?
>
> The Foreperson: Yes.
> The Court: Very well.  All right, ladies and gentlemen.  I will declare a mistrial in this case, and I'll talk to the attorneys after you leave about setting a future trial date.

*Id.* at p. 5-6.

Following this declaration of a mistrial and the scheduling of a new trial, Ms. Musser moved to dismiss the charges on double jeopardy grounds. *Id*. at p. 57. The motion was denied by the trial judge. *Id*. Ms. Musser and her son were retried on November 16-18, 2005, and convicted on all charges. *Id*. On December 22, 2005, Ms. Musser was sentenced to an aggregate term of incarceration of not less than sixty (60) months nor more than one-hundred twenty (120) months*. Id*.

In her post-sentence motion, Ms. Musser argued that the evidence presented at trial was insufficient to support her convictions and that her retrial was barred through the constitutionally protected right against double jeopardy. *Id*. at pp. 46-47, 111-12. The trial court considered these arguments and arrived at the following conclusion with respect to her double jeopardy claim:

> As a general rule, a mistrial because of a jury's inability to reach a verdict does not implicate the principles of double jeopardy, and retrial is not prohibited. *Commonwealth v. McCord*, 700 A.2d 938, 946 (Pa. Super. 1977)(citations omitted). Retrial is barred only if the jury made findings on one or more other charges which must be interpreted as an acquittal of the events for which the defendant is to be retried. *Id*. (quoting *Commonwealth v. Harris*, 582 A.2d 1319, 1322 (1990).
>
> In the instant case, the jury did not make any findings in the first trial. Rather, after approximately four hours of deliberation, the jury foreman informed this court that the jury was deadlocked and would not be able to reach a verdict due to one juror who did not see eye to eye with the rest of the jury, and was not going to change their opinion. This court went on to explain what declaring a hung jury would mean as far as putting a drain on the court system, and after a further inquiry into whether the foreman felt that the jury would be able to reach a verdict, the foreman responded "no." This court then

> appropriately declared a mistrial, and because there
> were no findings of fact or verdicts reached with respect
> to any of the charges, the safeguards against double
> jeopardy is not invoked.

*Id*. at p. 50.  Ms. Musser then appealed her conviction to the Pennsylvania Superior Court.  On October 11, 2007, the Superior Court affirmed the judgment of sentence on direct appeal.  See *Commonwealth v. Musser,* 173 MDA 2007 (Pa. Super. 2007)(per curiam)(docket sheet available on http://ujsportal.pacourts.us).  In its decision, the Superior Court addressed Ms. Musser's double jeopardy claim as follows:

> Finally, we address the Appellant's claim that the trial court
> erred in permitting a retrial after a mistrial was declared
> without a declaration of manifest necessity.  Where a jury
> does not agree on a verdict, a mistrial is declared and the
> jury is then properly dismissed.  *Commonwealth v. Hoover*,
> 460 A.2d 814 (Pa. Super. 1983).  Upon such an
> occurrence, "manifest necessity" is established.  *Id*.; *See
> also Commonwealth v. Peters*, 473 Pa. 72, 373 A.2d 1055
> (1977).  Double jeopardy is implicated only when a jury is
> dismissed without a showing of manifest necessity.  *Id*.
> This Court has specifically stated in this regard:
>
>> As a general rule, mistrial because of a jury's
>> inability to reach a verdict *does not implicate
>> the principles of double jeopardy, and retrial
>> is not prohibited. ...*Retrial is barred where
>> "the jury made findings on one or more other
>> charges which must be interpreted as an
>> acquittal of the offense for which the
>> defendant is to be retired."
>
> *Commonwealth v. McCord*, 700 A.3d 938 (Pa. Super.
> 1997)(quoting *Commonwealth v. Harris*, 582 A.2d 1319
> (Pa. Super. 1990)(citations omitted).
>
> In the instant case, there were no findings of fact by the
> jury in the first trial.  After four hours of deliberation, the jury
> represented to the trial court that it was deadlocked

> because one juror did not agree with the rest of the jury, and that juror was not going to change his or her opinion. After the court explained to the jurors that a hung jury would exhaust valuable court time, the foreman informed the court that it was still clear that the jury could not reach a unanimous verdict. Consequently, the trial court then declared a mistrial, without making any findings of fact and without reaching any verdicts. Thus, double jeopardy was not implicated, and the retrial was entirely appropriate due to the fact that the first jury was deadlocked. Thus, this constituted "manifest necessity". See *Hoover* and *Peters, supra*. This assignment of error similarly lacks merit.

*Id*. at pp. 62-64. On November 9, 2007, Ms. Musser filed a petition for allowance of appeal raising identical grounds for relief. See *Commonwealth v. Musser,* 173 MDA 2007 (Pa. Super. 2007)(*per curiam*)(docket sheet available on http://ujsportal.pacourts.us). On May 7, 2008, the Supreme Court of Pennsylvania denied her Petition for Allowance of Appeal. See *Commonwealth v. Musser*, 939 MAL 2007 (Pa. May 7, 2008)(*per curiam*)(docket sheet available on http://ujsportal.pacourts.us).

Ms. Musser then filed the present petition for writ of habeas corpus raising the sole claim that her conviction was obtained in violation of her Double Jeopardy rights under the Fifth Amendment to the United States Constitution. Doc. 1, Pet.

### III.     Standard of Review

Review of the Petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). See *Lindh v. Murphy*, 521 U.S. 320, 326-27, 117 S.Ct. 2059, 2063, 138 L.Ed.2d 481 (1997). Under the AEDPA, a federal court may not grant a writ of habeas corpus on behalf of a person in state custody "with

respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(West 2012).

"Clearly established federal law" within the meaning of 28 U.S.C. § 2254(d)(1) should be determined as of the date of the relevant state-court decision and is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, ___ U.S. ___, ___, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011); *Greene v. Fisher*, ___ U.S. ___, ___, 132 S.Ct. 38, 43-44, 181 L.Ed.2d 336 (2011); *Prosdocimo v. Sec'y, Pa. Dept. of Corr.,* No. 11-1034, 2012 WL 120102, at *3 (3d Cir. Jan. 17, 2012). When, as is the case here, "a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, ___ U.S. ___, ___, 131 S.Ct. 770, 783-85, 178 L.Ed.2d 624 (2011); *Moore v. Sec'y Pa. Dept. of Corr.*, No. 08-1085, 2012 WL 34514, at **6-7 (3d Cir. Jan. 9, 2012). And it is not necessary that the state court's decision on the merits be accompanied by reasoning for § 2254(d) to be applied. *Harrington*, ___ U.S. at ___, 131 S.Ct. at 784. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id.*

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have "independent meaning." *Williams v. Taylor*, 529 U.S. 362, 404-05, 120 S.Ct. 1495, 1519, 146 L.Ed.2d 389 (2000).  A state court decision is "contrary to" Supreme Court precedent if it either arrives at "a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the Supreme Court.  *Id.* at 406, 120 S.Ct. at 1519-20.  A state court decision "involves an unreasonable application" of Supreme Court law "if the state court identifies the correct governing legal principle from [the Supreme] Court's cases but unreasonably applies it to the facts of the state prisoner's case." *Id.* at 407, 120 S.Ct. at 1520.  A state court decision also may apply Supreme Court law unreasonably if it extends existing Supreme Court precedent to a new context where it does not apply, or unreasonably refuses to extend existing precedent to a new context where it should apply.  *Id.*  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, ___ U.S. at ___, 131 S.Ct. at 786; *Blystone v. Horn*, 664 F.3d 397, 417-18 (3d Cir. 2011).

To be eligible for relief under § 2254(d)(2), the petitioner must show that the state court decision was based upon factual determinations that were unreasonable in light of the evidence presented in the state court proceeding.  28 U.S.C. 2254(d)(2); *Porter v. Horn*, 276 F.Supp.2d 278, 296 (E.D. Pa. 2003).  Only when the finding lacks evidentiary support in the state court record or is plainly controverted by the evidence therein should the federal habeas court overturn a state court's

factual determination.  *Id*. at 296; *see also* Williams, 529 U.S. at 408-09, 120 S.Ct. at 1520-21.  Finally, the United States Supreme Court has admonished that a "state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Wood v. Allen, ___ U.S. ___, ___, 130 S.Ct. 841, 849, 175 L.Ed.2d 738 (2010).

**IV.**  **Discussion**

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution commands in part that "nor shall any person be twice put in jeopardy of life or limb."  U.S. CONST. amend. V.  Most clearly, the Double Jeopardy Clause "unequivocally prohibits a second trial following an acquittal."  Arizona v. Washington, 434 U.S. 497, 503, 98 S.Ct. 824, 829, 54 L.Ed.2d 717 (1978).  Ms. Musser was not acquitted at her first trial, it was terminated without finally resolving the merits of the charges against her.

The Double Jeopardy Clause does not bar retrial when a mistrial is declared due to a "manifest necessity."  *Id.*, 434 U.S. at 505, 98 S.Ct. at 830.  The "classic basis" for a mistrial due to a "manifest necessity" exists when a jury declares that it is unable to reach a verdict.  *Id.* at 509, 98 S.Ct. at 832.  A "trial judge's decision to declare a mistrial when he considers the jury deadlocked is ... accorded great deference by a reviewing court," since the trial judge is "in the best position to assess all the factors which must be considered" in determining whether the jury will be able to reach a verdict following further deliberations.  *Id*. at 510, 510 n. 28, 98 S.Ct. at 832.  A trial judge "may declare a mistrial whenever, in [his or her] opinion,

taking all of the circumstances into consideration, there is 'manifest necessity' for doing so, [ ] but the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes." *Renico v. Lett*, ___ U.S. ___, ___, 130 S.Ct. 1855, 1863, 176 L.Ed.2d 678 (2010)(internal citations omitted); *see also United States v. Wecht*, 541 F.3d 493, 504-505 (3d Cir. 2008).

In *Lett*, the United States Supreme Court outlined a federal habeas court's role in evaluating a petitioner's challenge to a trial court's declaration of a mistrial:

> [The] question is not whether the trial judge should have declared a mistrial. It is not even whether it was an abuse of discretion for her to have done so ... The question under AEDPA is instead whether the determination of the [state court] that there was no abuse of discretion was "an unreasonable application of ... clearly established Federal law." § 2254(d)(1).

*Lett,* ___ U.S. at ___, 130 S.Ct. at 1862. As previously explained, the application of federal law must be "objectively unreasonable," not just incorrect; state court decisions are treated with high deference and are "given the benefit of the doubt" *Id.* at 1862 (quoting *Woodford v. Visciotti,* 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002)). Additionally, a trial judge is not required "to make explicit findings of 'manifest necessity'" or to state all the factors behind his or her decision, or "to consider [ ] means of breaking the impasse," such as forcing the jurors to deliberate for a minimum period of time or providing additional instructions to the jury. *Id.* at ___, 130 S.Ct. at 1864.

In light of this instruction, the Superior Court of Pennsylvania's decision was not objectively unreasonable under the AEDPA. 28 U.S.C. § 2254(d)(1). The Court's analysis was clearly in accord with the federal standard of review. *See* Doc.

12-3 at pp. 62-64.  The state court applied the "manifest necessity" standard and found that the trial court judge did not abuse his discretion in declaring a mistrial. First, the court noted that the jury had reached an impasse after four hours of deliberation.  Second, the court relied on more than the jury's simple representation that it was "hopelessly deadlocked".  The foreman explained that there was "one juror [who] did not agree with the rest of the jury, and that juror was not going to change his or her opinion."  Doc. 12-3 at p. 63.  Additionally, after the trial judge counseled the jurors on the consequence of the declaration of their inability to reach a unanimous verdict, the judge only declared a mistrial after the foreman stated that "it is still clear that the jury could not reach a unanimous verdict."  *Id*.

As noted earlier, in the case of a deadlocked jury, the trial court's decision must be accorded deference.  In this case, it is clear that the trial judge's exercise of that deference was sound.  The Supreme Court has "expressly declined to require the mechanical application of any rigid formula when trial judges decide whether jury deadlock warrants a mistrial." *Renico*, ___ U.S. at ___, 130 S.Ct. at 1863 (internal quotation marks omitted).  Moreover, a trial judge is not required "to force the jury to deliberate for a minimum period of time, to question the jurors individually, to consult with (or obtain the consent of) either the prosecution or defense counsel, to issue a supplemental jury instruction, or to consider any other means of breaking the impasse."  *Id*. at ___, 130 S.Ct. at 1864.  Here, Ms. Musser's double jeopardy claim fails as a matter of law because it cannot be said that the Superior Court of Pennsylvania's decision was "objectively unreasonable".  The Superior Court carefully explained the trial court's exercise of its discretion, noting that the jury was

hopelessly deadlocked due to a single juror who was not "going to change" his or her mind regardless of further deliberations which the foreperson represented would be "fruitless."  Doc. 12-3 at p. 6.  Accordingly, the trial court's decision in this matter must be accorded deference, as found by the Superior Court.  *Renico*, ___ U.S. at __, 130 S.Ct. at 1863.  Thus, the first jury's deadlock in Ms. Musser's case justified a mistrial declaration, and permitted her retrial without offending the Double Jeopardy clause of the Constitution.

**V.      Certificate of Appealability Denied.**

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealabilitly (COA), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.  A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller–El v. Cockrell*, 537 U.S. 322, 327, 123 S.Ct. 1029, 1034, 154 L.Ed.2d 931 (2003).  Based on the analysis in this memorandum, there is no basis for the issuance of a COA.

**V.     Conclusion**.

Based on the foregoing discussion, the petition for writ of habeas corpus will be denied.  Petitioner is advised that she has the right for thirty (30) days to appeal our Order denying her habeas petition, *see* 28 U.S.C. § 2253(a); Fed. R.App. P. 4(a)(1) (A), and that our denial of a certificate of appealability does not prevent her from doing so, as long as she also seeks a certificate of appealability from the United States Court of Appeals for the Third Circuit.  *See* Fed, R. App. P. 22(b); Local Rule of Appellate Procedure 22.1.

An appropriate Order follows.

/s/ A. Richard Caputo
**A. RICHARD CAPUTO**
**United States District Judge**

**Date: April 10, 2012**

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DIANE L. MUSSER,** : | |
| : | |
| Petitioner : | |
| : | CIVIL NO. 3:CV-09-0151 |
| v. : | |
| : | (Judge Caputo) |
| **RHODA A. WINSTEAD,** *et al.*, : | |
| : | |
| Respondents : | |

**O R D E R**

**AND NOW**, this  **10th**  day of **APRIL, 2012**, upon consideration of the petition for writ of habeas corpus (Doc. 1), and for the reasons set forth in the accompanying memorandum, it is hereby **ORDERED** that:

1. The petition for writ of habeas corpus (Doc. 1) is **DENIED**.

2. The Clerk of Court is directed to **CLOSE** this case.

3. There is no basis for the issuance of a certificate of appealability.  *See* 28 U.S.C. 2253(c).


                                                    /s/ A. Richard Caputo
                                                    **A. RICHARD CAPUTO
                                                    United States District Judge**